FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 FEB 15 P 12: 36
CLERK [signature]
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PEARLINE M. HUBBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 111-010 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pearline M. Hubbert ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I.  BACKGROUND

Plaintiff protectively applied for DIB and SSI on August 9, 2006, alleging a disability onset date of July 28, 2007. Tr. ("R."), pp. 127-33. The Social Security Administration denied Plaintiff's applications initially, R. 52-55, and on reconsideration, R. 56-59. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a

hearing on September 11, 2009. R. 21-45. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as a Vocational Expert. See id. On October 20, 2009, the ALJ issued an unfavorable decision. R. 11-20.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since July 28, 2007 (20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).

2. The claimant has the following severe impairments: pancreatitis, hypertension, and depression (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, & 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work[1] except the claimant should avoid climbing ladders. She is further limited to unskilled work only. In light of her RFC, the claimant is capable of performing her past relevant work as a fast food worker (20 C.F.R. §§ 404.1565 & 416.965).

R. 16-19.

Because the ALJ determined that Plaintiff could perform her past relevant work, the

---

[1]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

2

sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from July 28, 2007, through October 20, 2009 (the date of the decision). When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff raises a single issue in this case, arguing that the ALJ erred by failing to find that Plaintiff met Listing 12.05(C) in light of her consultive evaluator's determination that she functions in the mildly impaired range of IQ testing with a full scale IQ score of 65. (See doc. no. 8 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's applications for benefits was supported by substantial evidence and should be affirmed. (See doc. no. 12 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial

evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

As noted above, Plaintiff's sole allegation of error is that the ALJ erred by failing to

find that Plaintiff met Listing 12.05(C) in light of her consultive evaluator's determination as to her IQ and her other severe impairments. See Pl.'s Br., pp. 4-5. According to Plaintiff, given the reported IQ score and her other severe impairments, she meets the 12.05(C) Listing. See id. The Commissioner, on the other hand, contends that substantial evidence in the record proves otherwise. See Comm'r's Br., pp. 3-10. The Court notes from the outset that Plaintiff bears the burden of showing that her condition meets or equals the Listing. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

### A. IQ Scores Not Conclusive

Listing 12.05(C) -- the only provision at issue in the instant action -- pertains to "Mental retardation," which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment

before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The Listing further provides: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when she "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[2] The Eleventh Circuit, however, has recognized "that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting that while a claimant's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of mental retardation); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) (noting that IQ "test results must be examined to assure consistency with daily activities and behavior").

Here, the ALJ's decision acknowledged that in an August 31, 2009 consultive

---

[2] Although paragraph C of the 12.05 Listing sets forth two criteria, an IQ prong and an additional impairment prong, these criteria apply in conjunction with the Listing's definition of mental retardation as "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C) (emphasis added); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (noting the criteria for obtaining benefits under Listing 12.05(C)).

6

psychological evaluation, Kevin Turner, Ph.D., reported that Plaintiff had a full scale IQ of 65, which placed her in the "mildly impaired range" and indicated significant cognitive function impairment.³ R. 18, 645-48. However, as noted above, the presumption of mental retardation from low IQ scores can be rebutted with evidence of daily activities that are inconsistent with such a diagnosis, particularly when, as in this case, there is not conclusive evidence that Plaintiff has ever been diagnosed with mental retardation, let alone that such diagnosis manifested before age 22, as is required by the applicable Listing. See Hodges, 276 F.3d at 1269 (recognizing requirement of Listing 12.05(C) for manifestation of mental retardation before age 22 and allowing that Commissioner may use evidence of activities of daily life to rebut presumption of mental impairment).

In his decision, the ALJ specifically rejected Dr. Turner's opinion regarding Plaintiff's cognitive limitations, finding that Plaintiff "is capable of fully independent functioning." R. 19. The ALJ noted that Plaintiff has a driver's licence, lives alone, and "is capable of handling her finances and activities of daily living." Id. Moreover, the ALJ heard Plaintiff's testimony at the hearing about her activities, during which she stated that she took care of things in her home, prepared her own meals, cleaned up for herself, did laundry, and washed dishes. R. 32. Plaintiff also testified that she did "seek and find" books and that she

---

³Plaintiff takes issue with the fact that the ALJ did not specifically mention Listing 12.05(C) in his step three determination, instead discussing the evidence regarding Plaintiff's cognitive limitations during a later portion of his decision. However, as the Commissioner points out, see Comm'r's Br., p. 10 n.4, there is no requirement that an ALJ "mechanically recite the evidence" leading to his step three determination, and the Eleventh Circuit has held that an ALJ may make an implied finding that a claimant's impairments did not meet or medically equal the Listings. See Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (citing Edwards v. Heckler, 736 F.2d 625, 629 (11th Cir. 1984)).

7

visited socially with her neighbor on a daily basis. R. 33. In addition, Plaintiff reported that she had a 15-year history of work as a cook at a fast food restaurant and that she completed high school without taking special education classes. R. 140-41, 143, 146-47.

Furthermore, the ALJ noted that Dr. Turner's evaluation had produced a Global Assessment of Functioning score of 60, which did not indicate serious limitations in social and occupational functioning. R. 18, 648. The ALJ additionally remarked that a non-examining state agency psychological consultant opined in May of 2008 that Plaintiff had no mental limitations and was capable of independent functioning. R. 18, 379-92.

Thus, the Court concludes that in light of the other evidence of record, including Plaintiff's lengthy work history and daily activities both before and after the age of 22, as well as the findings of examining and non-examining psychologists, the ALJ properly determined that Plaintiff did not meet the criteria for Listing 12.05(C), despite the IQ score reported in Dr. Turner's August 2009 consultive evaluation report.

### B. Severity of Additional Impairments Moot

Plaintiff also argues that she satisfies the additional impairment prong of Listing 12.05(C) because the ALJ determined at step two of the sequential evaluation process that Plaintiff's pancreatitis, hypertension, and depression were "severe" impairments. Pl.'s Br., p. 5; R. 16. Plaintiff cites to Edwards *ex rel.* Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985), for the proposition that the additional impairment prong is satisfied by "something less than 'severe' within the meaning of § 404.1520(c)." Therefore, she contends that "[i]t is clear she meets the second prong of [Listing 12.05(C)]." Pl.'s Br., p. 5. However, in light of Plaintiff's failure to show that she satisfies the first prong of Listing

8

12.05(C) concerning her intellectual functioning, her argument concerning the severity of her other physical impairments is moot.[4]

In sum, the ALJ's finding at step three of the sequential evaluation process that Plaintiff did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 – including Listing 12.05(C) – is supported by substantial evidence and should be affirmed.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 15th day of February, 2012, at Augusta, Georgia.

*W. Leon Barfield*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4] As noted above, in order to show that her impairment meets a Listing, Plaintiff needs to meet all of the specified criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530.

9